I'm here today on behalf of PriorityOne Bank on the appeal on two issues before this court. And those two issues are first the issue concerning a waiver of a conflict of interest, specifically whether when an arbitrator affirmatively misrepresents his relationship with parties in a sworn statement as well as falls short of abiding by the continuing obligation to disclose any relationship, are the parties entitled to rely on those sworn disclosures without a waiver? And if those parties do rely on the sworn statement, will the party have waived their right to challenge the award on the basis of a conflict even if they didn't conduct additional due diligence after receiving the sworn statements? And what we're asking the court to do today is to modify its rulings and follow the Middlesex case of the 11th Circuit that is really narrow in its interpretation, which basically allows for when an arbitrator affirmatively misrepresents his relationships with the parties in a sworn disclosure, a party relying on those disclosures does not waive the right to challenge the award on a later discovered conflict, including when the parties did not conduct any additional. But how can we under the rule of orderliness change our precedents? You just said we had to modify them. I'm not sure I'm understanding that because we're not, you could ask an en banc court to do that, that's fine, but you can't ask us to modify our own precedents absent an intervening Supreme Court decision or en banc or changing a statute or something like that. Well, your cases, and it's really not modify, it's clarify, because the cases... Those are very important different words. They're true. Thank you, Your Honor. I appreciate that, Judge Haynes. And excuse me for my misspoken word there, but we're asking for a clarification there, because the cases that have considered this issue have really been when waivers are in place, at least the cases that this court has considered, the facts in those cases have always had an instance where the arbitrator did something to disclose something or give the parties some kind of indication that there could be a conflict, either in writing or otherwise. And in this instance, that didn't happen. In this instance, the arbitrator clearly signed a sworn statement and clearly based on his testimony at the district court level, because he contradicts himself, clearly knew of those issues but did not disclose them. What was the statement that he made that you say he misstated? Well, there's several statements. One would be is that he didn't remember, yet he testified he was making monthly payments. Then he testified that it wasn't significant. But then he conceded that a $700,000 . . . But what was the lie he told you originally in your opinion? What was the original lie? In other words, what was the statement that you think affirmatively cuts you off from doing any further due diligence? That's, I think, what Judge Davis is asking. I'm sorry. I thought you were going back to what the . . . Financial, personal, social, and he answered no to all of those questions. And he testified that he did understand the conflicts of interest rule. He did understand the disclosure rules. Yet at the time he signed the disclosure statement, he said he had no relationship with the parties whatsoever. If he had only said, I have had a financial relationship with one of the parties, the parties would have been put on notice to ask the additional questions. What are those relationships? Did he have a relationship with the bank at the time he signed the statement? Yes, sir, he did. What was that? It was a $700,000 loan that he had guaranteed. Okay. And when was that loan transferred then? I can give you the history of that loan. I think that loan goes all the way back to 2013, maybe 14. He signed the disclosures in 2017. The loan was paid off in 2018. But an important part there is that the loan officer that was handling this loan didn't know that he was arbitrating this case. Essentially took the position they were not going to be able to renew the loan with this bank. But the district court considered all this but noted that there were . . . Mr. Corlew, his name was on the documents over 15 times and said that your people could have discovered that because his names are all over the loan documents. And so there was constructive knowledge. And so how could we disturb that, that you have constructive knowledge because it's over the documents that you certainly had access to as part of this proceeding? Well, we believe the district court's opinion found that we had actual notice, not actual knowledge, which we think is . . . I thought it said constructive knowledge. Yes, ma'am, he did. Constructive knowledge is all you need in this circuit under Light H. So why is that wrong? If the name is in the loan documents on these very loans, why isn't that enough? Well, to hold senior management to have constructive knowledge of every document in the bank gets back to the Middlesex case. It's impossible to hold divisions of an organization responsible for knowing everything else that's going on in every division. Well, in our Light H. case, we said having constructive knowledge is a good thing because it encourages parties to conduct adequate due diligence prior to the issuance of the award and promotes the arbitration goals of efficiency and finality, and that was quoting the Goldman Sachs case. It'd be Light H. quoting that. Isn't that our law? Well, in Light H., the facts were a little bit different. If you recall, and I know y'all do, in that instance, the arbitrator was actually communicating with the parties on the firm email address. So constructive knowledge in that instance would be one thing. It was pretty easy because the email address had the tagline on the bottom. So you're saying it was easier in that case than here. Absolutely, Your Honor. And I would contend if Mr. Corlew had emailed one of the officers involved in the arbitration and said, I need help on my loan, and we said we didn't have knowledge of that, that would be a different issue. But that's not the case. I'm trying to understand what is the limit because obviously we all have constructive knowledge of everything on the Internet, you could argue, because, I mean, the Internet is full of goo and you can search and find it and this kind of thing, and I don't think that the Light H. case went that far. But yet we also, it's clear that, you know, if you get an email from somebody that says, you know, even if I don't say that. So where would you draw the line between knowing everything that's on the Internet, which I don't think we've held and I don't think we will hold, and something like an email that you send me from your firm that makes it really clear who you are? Keep in mind in this case, this email was an email internally between a loan officer and senior management, the chief executive officer and the chief credit officer. And the gist of that email was this. The information that should have been submitted to the committee was not submitted in order to get the right approval on this loan. The chief credit officer replied, whatever we agreed to, we have to agree to. We cannot go back on the promise we made to a borrower. The borrower was in the ray. The arbitrator's name was not there anywhere. If you look further in the embedded email where the question is not, and it's several pages down into the email, that's where you find the arbitrator's name. It's in the very email, though, in the attachments. It is, Your Honor. So it's not searching the Internet. It's searching your own email that you got particularized to this very case about a key issue. But, Your Honor, again, even if you have that name there, drawing the conclusion that they should have known that this person was the same person arbitrating a case in Jackson, Mississippi, was the same person that guaranteed a real estate loan in Hattiesburg, Mississippi. Well, Mississippi is a big state, but it's certainly worth an inquiry, don't you think? If, in fact, both officers testified that not only did they not know that he was a guarantor of that loan, they did not know that it would have been the same person. Well, we're kind of talking about this. How did you find out about it after the judgment? The award was so bad that they felt like something was wrong, and they started asking questions within the system. And about a week later, we were able to uncover that this person had guaranteed a loan. There's no dispute to that. You know, but we don't get . . . we're kind of acting like this is de novo. This isn't de novo. This is clearly erroneous, this determination that the district court made that your client had constructive knowledge. So we have to be . . . you have to establish a . . . it's very difficult, as you know, because you're an experienced lawyer, to find clearly erroneous, that the district court is clearly erroneous. Isn't it? So how is this clearly erroneous? Well, we think that the district court judge went too far in this because, again, if what you're going to say is that the person handling the arbitration has constructive knowledge of everything in the system, even if it's in an email that comes to them, and they testify that they didn't have knowledge that that was the person, that that's gone too far. And we do think that's clearly erroneous. We think all of the testimony . . . we think it's circumstantial to draw the conclusion that you're going to read every email from page 1 to page 6, 7, 8, 9, whatever, in every instance, instead of answering the question. I'm not saying that there's not actual notice there, but I'm saying that the officers did not have actual knowledge of this. Well, actual knowledge is not required, as we've already established. That's correct. And the district court found there was constructive knowledge. Isn't it possible, if we have to take his finding, that he didn't believe your client when they said they didn't realize it was the same person? I mean, that's . . . I'm not saying that your client was not telling the truth. I'm just saying he gets to . . . he had a hearing on it. But he didn't reach that conclusion, in his opinion. And we do think there's . . . there is a small gap there. And what's happening here is that the district court is finding constructive knowledge and is shifting the burden to the parties in the arbitration away from the arbitrator who essentially violated the process of arbitration. He's under a sworn . . . he's issued a sworn statement that he has no conflict there or no relationship. And our whole point is that parties should have an opportunity to rely on that sworn statement without additional investigation. And, in fact, if you . . . Well, we actually have said, no, you should make additional investigations. We want everybody to do due diligence. That's our case law. But, Your Honor, it doesn't describe doing due diligence after sworn statements. In this instance, the bank actually did some due diligence. Arbitrators were turned down before this one was selected. We went through that process. And the record reflects, while . . . How would you articulate the rule? I think I asked you that earlier. But, obviously, we have a constructive knowledge rule, but it doesn't cover the whole Internet, at least in my view. Where do you think we should draw that line? I think the Middlesex case out of the Eleventh Circuit is where you can draw that line. And it's where the arbitrator affirmatively misrepresents his relationship with the parties in a sworn disclosure. And the parties rely on that disclosure statement. That they will not waive the right to challenge the award based on a later discovery just because they didn't do additional investigation after receiving and relying on the sworn statement. It's actually shifting that. And it's putting . . . It's really putting a priority on . . . Because if the parties can't rely on the sworn statement and must continue to do due diligence after that fact, when the sworn statement is really clear, there are multiple questions. I know you all have seen those AAA arbitration sworn statements before. It's not just a, do you have any relationship? They are questions. He answered no to. And, quite frankly, we took that and relied on it. I mean, if you saw someone at the football field 20 years ago, write that down. Now, I'm obviously exaggerating on that. But I'm just saying they are very, very demanding on that. And so I agree with you that that is demanding by AAA. I go beyond that. I don't think it's just AAA. I think it's the whole concept of the Federal Arbitration Act. They want the arbitrators to be fair, honest, and have integrity. And so they want disclosures there. And different associations have taken that to an extreme maybe and done more. But when you have a multiple-question questionnaire that the arbitrator affirmatively says that he understood and he affirmatively looked at the conflicts and the requirements, and then yet he didn't disclose this, a $700,000 loan that existed that he was making monthly payments on. I'm not sure how you forget that. And he basically agreed with that in his testimony. And that's where I jumped around. I apologize. Your time is up. But I do have a question. Are you relying on this Hall Street argument, or do you concede that our case law has already held that manifest disregard did not survive Hall Street? I do not think your case law says that manifest disregard did not survive Hall Street. Well, we'll have to talk about that. I think it says that it didn't survive it on a common law basis, not a statutory basis. Okay. Well, we're going to talk about that on rebuttal then because Citigroup pretty much says, I don't understand how it could survive Hall Street. And we've been saying that for a long time now. And, Your Honor, I concede that this court has held that it does not survive on a common law basis. But I think the cases clearly point out that it has not been addressed whether or not it survived on a statutory basis under 1084. Screwing the statute. Thank you. Right? You're saying screwing the statute to mean manifest disregard. That's your argument. Okay. Thank you. Please. Please, the court. Vic Welsh for Trustee Shaper. The members of this panel have been the writing judge or a panel judge on 9 opinions addressing the issue of manifest disregard, evident partiality, and waiver in this case. Your honors wrote the law and the bank is asking you to overrule your law. I'm going to deal with evident partiality first and then manifest disregard second. Let's assume, arguendo, that there was evident partiality. That's what the district court found. But we're just inquiring about the waiver point. Where would you draw the line? I'm assuming, arguendo, you're not going to argue that if I could have found out something about you on the Internet, then I have constructive knowledge of that, that it's more detailed than that. So what is your argument that what we should write in our opinion on what that line is between I know your name and I could look on the Internet? The bank should have constructive knowledge of its own documents, especially when the corporate representative in the arbitration is the chief loan officer of the bank. The chief loan officer in the bank didn't just review an e-mail. I'm moving more to actual knowledge now. He didn't just review an e-mail. He reviewed the arbitrator's financials five months after the arbitrator was selected. He was on the loan committee with the CEO of the bank reviewing the arbitrator's financials. So when you're saying constructive knowledge, let's assume we have a, I don't know, a huge bank, okay, that has millions of documents. Is it if I'm going to have an arbitrator that is John Smith, do I go online and find John Smith? And every John Smith that shows up, I need to find out who they are and ask the arbitrator about that? Well, again, under the facts of this particular case, it was the loan officer that was involved in the loan that was the corporate representative. I think, as I understand the court's question, let's assume a loan officer at some remote branch may have had some dealings with the arbitrator. But that's not what we have here. No, but I was asking you what the line is. I mean, you know, our opinion matters to you, but it also can matter to other people. So I'm trying to understand the line, where that is. I think in this particular case, the line ought to be drawn where the bank has access to its own searchable documents in its system. As the district judge found, they didn't even put the name John Corlew in a search box and hit enter. The bank had the capability to do that, and they didn't do that. So if the person only had documents that were in folders somewhere, they wouldn't have to go search the folders. They would just search online. I'm just trying to understand, because whatever we rule going forward, some bank has an arbitration coming up. They're going to need to follow that. So do they need to just go online? Do they need to go search the file drawers? I mean, what? I think that the court can write an opinion consistent with the prior opinions of this court if the documents are searchable and accessible, and in this case they were. If the documents were in a folder in a file drawer somewhere, I think that's going to be a factually distinct case. Do we even need to do that? If the district court found that they had constructive knowledge and they would have a burden of saying that on these facts it's clearly erroneous standard, I'm not sure whether we even need to figure out where the line is. Let me ask you this. Was the loan officer in the loop when they chose the arbitrator? Yes, he was the one that chose the arbitrator. He was the one that approved the arbitrator. He was the corporate representative who not just the loan officer, the CEO of the bank, and both of them were dealing with this arbitrator's loan within five months. To answer your question, Judge Elrod, the court has a clear grasp of clear error review. Under clear error review, if there's any evidence in the record to support the district judge's findings, then they can't be overturned. But you just said they were personally involved. They were personally involved. These two people who were in this arbitration as the leading people in this arbitration were also the leading people in the loan personally. This is not Bank of America where the CEO doesn't know about this loan. These people were personally involved in this $700,000 loan. That's correct. And just to make my point— So you're saying the law doesn't matter because the facts here are good enough. I am curious about the law and how far this goes because I do think our opinion will have an impact on people unless we just say affirm 47-6. I think if it's the entity's internal documents that are accessible by the corporate representative to the arbitration or the parties involved in the arbitration, then they should be deemed to have constructive knowledge. So you think when a bank is picking an arbitrator or part of an arbitration, they do need to run a search through their Internet, through their online documents, and see if that name pops up. They need to find out if that's the arbitrator or if it's some other John Smith. No, I don't think that. I think the Fifth Circuit has ruled that in the Dealer of Computer Services case. In the— In the Dealer of Computer Services case. You think that's its ruling? The party has a duty to investigate before the arbitrator is selected. And the bank is—this is the nuanced argument that the bank is making. The arbitrator didn't turn over anything that would trigger that duty. Yes, he did. He turned over his name, and that's all they needed. All they needed was his name. You think the arbitrator has no duty at all to disclose that he's a guarantor of a note? I mean, that would put the bank on notice to look. You're asking me should the arbitrator have disclosed. I'm not going to defend that. Absolutely. The arbitrator did the wrong thing. I think, in hindsight, the arbitrator should have disclosed. But you can't negate the duty of the bank to also do its own investigation. And remember the evidence. The bank testified that they don't even investigate arbitrators. It's not just that they didn't look. They chose not to look. So how can this court write an opinion overruling the district court judge in a case where the bank chose not to look? And it was the bank's own record. Why should the arbitrator get away with a lie? Let me address that from a legal standpoint, because I think, Judge Haynes, you're really focused in on the law in this case. The court is asking—the bank is asking you to adopt a middle sex. And middle sex is only one part of the equation in this court. It's not just—Judge Elrod was the writing judge on the OG—it's the OGC case, the positive software case. It's not just the failure to disclose. It's concrete evidence that that flowed into the arbitrator's opinion. It's evident partiality of bias. It's not just the failure— But the district court did find that. And if we're going to defer to district courts, did find that. And let me comment this way. I think the district court looked at the conflict, glossed over whether the bias flowed into the opinion because he wanted to get to the issue of waiver. I think being a good district judge, he knew this court was going to want to know what his thoughts were on all of the issues. And in order to get to the issue of waiver, you're right, Judge Haynes, he had to make that finding. And I think that's why he did it. So we have to take that, too. So can you make us comfortable with the idea that an evidently impartial arbitrator lied to the people and then we affirm his decision? You can look— How do we get comfortable with that? You can look at the positive software case. Judge Davis was on the panel. If you look at the positive software case, the arbitrator was actually in co-counsel with one of the attorneys in the arbitration and had failed to disclose that. And they knew that. And they knew it. And in that case, Judge Davis was on the panel. They cite cases where the relationship was much, much—financial relationships between the arbitrator and the parties that were not disclosed. And the court declined to overturn the arbitration award in those cases. In the OOGC case, the relationship was with a third party. And if the arbitrator—it was a unanimous opinion, I believe, by the panel, and the opinion benefited a third party that was involved with one of the parties in the arbitration. The facts in the positive software case are pretty bad. They're bad. But still the court didn't grant relief. There's no question. They're bad, and still the court didn't grant relief. And, again, it's the two-part test. It's evidence that the bias flowed through to the arbitrator's opinion. And there's no evidence of bias in this case. I understand the failure to disclose the conflict. But the evidence of bias that the bank brought up was manifest disregard for the law, which is a nonstarter. The arbitrator did not manifestly disregard the law. It followed the law. And then the other evidence of bias was possibilities and speculation. Can I ask a question about the Eleventh Circuit? Could we follow the Eleventh Circuit's lead if we wanted to? In the Middlesex case? Yes. If you want to overrule— No, do we have the power? Is it just clarifying our law, or would it be inconsistent with our prior precedent and our rule of orderliness for us to adopt the Eleventh Circuit approach? It would violate the principles of stare decisis. Well, we call it the rule of orderliness. Rule of orderliness, the rule of law. There would be a new rule. If this court adopts the bank's position, there will be a new rule in this case as it relates to evident partiality, and a new rule in this case as it relates to waiver. And your honors, two of which are on this panel, will be overruling themselves in prior cases. And I believe Judge Haynes has also written on this issue as well. I wrote on manifest disregard. Well, I joined in writing on manifest disregard. Let me put it that way. I think you wrote the Allum v. KBR case and the United Forming case, and those are evident partiality waiver cases. So the rule is if the party to the arbitration doesn't do its due diligence, it doesn't matter what the arbitrator says to it. I don't think the court should go that far. I don't think it should say it just doesn't matter what the arbitrator does. I mean, for example, let's assume the arbitrator in this case failed to disclose. Under the arbitration agreement, he was supposed to apply Mississippi law, but instead he failed to disclose and he said, you know what I'm going to do? I'm going to apply Texas law because it's more favorable to the trustee. Well, that's evidence that that bias may have flowed over into the opinion, and that's evidence that the arbitrator – that also goes to the issue of whether or not the arbitrator exceeded his powers, but that didn't happen in this case. I think you can – But you've got to take evident partiality in this case. I'm sorry. You're stuck with that finding. So it's right in. Then what we're talking about here is going to be the issue of waiver and whether or not this court wants to change the law on waiver and whether or not the court wants to take away or write an opinion that says that evidence of bias – that a party no longer has a duty to investigate prior to selecting an arbitrator, that a party does not have constructive notice of its own documents, that actual knowledge of a conflict does not amount to waiver, and this new law would all be in a case where this panel has to conduct a clear error review of the district court's findings. What do we do about manifest disregard? Manifest disregard for the law – first of all, the Fifth Circuit's in the majority. They write that the Fifth Circuit's in the minority on manifest disregard, but they're not. The Fifth Circuit's in the majority on this issue. After Hall Street, manifest disregard for the law was rejected, and then the Hall Street court did not make a finding as to whether or not it could come up under the statute under Section 10A4 of the Federal Arbitration Act. The Second and the Ninth Circuit are in the minority. They have found that it can be a judicial gloss on the arbitrator exceeding his powers under 10A4. The error with the bank is the bank has the Tenth Circuit case on the wrong side of the scales. The Tenth Circuit and THI of New Mexico sided with the Fifth Circuit. If you look at page 1088 of the opinion, for the clerks listening, they specifically assumed manifest disregard applied without deciding whether it applied as a statutory basis. So there are six, and then the bank failed to include the Sixth Circuit. The Eleventh Circuit, Frazier v. City Financial Corp., 604F313. At page 1324, the Eleventh Circuit adopts the Fifth Circuit's position. So there are six circuits on the Hall Street side, and there's only four circuits in the minority. So the Fifth Circuit's going to have to flip on this one. Well, we can't flip. We have to stick with unless somebody takes us on bond. That's my point. If the court writes a new rule of law, it's going to have to change the law. They're saying that there's some sort of statutory ground of manifest disregard under the enumerated provisions. The argument is that you should construe 10A4 to include manifest disregard. Right. And what is your response to that as a statutory analysis? My response is that the cases and the circuits that have decided that way, it's based on faulty reasoning, and here's why. The Second and Ninth Circuit rely on the Stolt-Nielsen case. It's a Supreme Court opinion. It's cited in the briefs. And what they say is that in that case, the United States Supreme Court did not specifically say that manifest disregard could not come under the statute. All right. But what they do say in that case is the circuits that cite that case believe that since the Supreme Court in the U.S. Supreme Court opinion, Stolt-Nielsen, overturned the arbitration award, that the Supreme Court was essentially giving its blessing to a statutory basis for manifest disregard. And that's not what happened in the Stolt-Nielsen case. If you look at McCool-Smith, for the court and the clerks listening, look at McCool-Smith and look at footnote four. In footnote four, the Fifth Circuit analyzes that U.S. Supreme Court opinion and rejects the logic that other circuits have relied on in order to find manifest disregard as a statutory basis. In the McCool-Smith case, it says the United States Supreme Court in Stolt-Nielsen makes no mention of a violation of law, that the Supreme Court based its opinion on the fact that the arbitrator violated the arbitration agreement by interjecting his own policy and stating that the arbitration agreement included a basis to allow class action arbitration. So here's what I'm, here's my, and I guess I'm coming back around to answering the question, the cases that have ruled the other way are based on faulty analysis of the law. There's three reasons this court should not adopt manifest disregard for the law in this case. The first one is that it's creating a solution to a problem that doesn't exist. I mean, think about what's, are there cases coming up from the district court where the district court is saying we don't have the ability to overturn these rogue arbitration awards? No. Those cases are not coming up, so it's addressing a problem that doesn't exist. My second point is where would this court place the risk? Would this court place the risk on the parties to the arbitration who have an undeniable duty to investigate and select an arbitrator with the appropriate qualities, or is this court going to place the burden on future panels and future courts in this circuit? If the panel opens up the courthouse to judicial review of arbitration awards based on the fact that the arbitrator didn't follow the law, then commercial arbitration will cease to exist and, as the Supreme Court noted in Hall Street, will become merely a prelude to a more cumbersome and time-consuming judicial review process. And I don't believe that that's, there's not a single opinion out of this court that is heading in that direction, in fact, heading in the other direction. This court has routinely held that it does not have the authority to review errors of fact or errors of law in arbitration. That's the issue with choosing arbitration. You don't get an appeal. That's the issue with choosing arbitration. And then the last— Pluses and it's got its minuses. Pluses and minuses. And my last reason, I've only got 30 seconds left, is that the arbitrator followed the law. Real quickly, the bank incorrectly cites some of the cases like the OMP security case. The bank cites a quote from the case that is incorrect. In that case, at page 259 of the opinion, it says that a deficiency judgment is typically based on the bid price at a foreclosure sale. Well, that's the bank's argument, but the court in that case was speaking from a historical perspective. That wasn't the law. The court went further and held what the law was, as cited in the Hartman case. The burden is on the bank to establish fair market value from which it can be determined whether a deficiency exists. This was a case of competing evidence. The case law says that the arbitrator was well within his authority to decide a deficiency based on fair market value, and that's what he did. Thank you. You've saved time for a vote, sir. Let me just ask you. Counsel said that the bank officer who handled this loan was in charge of picking the arbitrator or approving the arbitrator. Did one of the people handling the loan have a voice in selecting the arbitrator? Absolutely not, Your Honor, and there's no evidence in this case to even make that point. Opposing counsel has taken liberty with some of the facts in this case that I'd like to point out to you, and it's really in the docket itself. You know, when they talk about what these two officers did, and I realize I only have five minutes and I've got to cover a lot, so let me hit these quick. They were not directly involved in this loan. There was a loan officer in Hattiesburg, Mississippi, the chief executive officer who runs the bank that really wasn't even involved in the arbitration but didn't know what was going on, and then the chief credit officer that was the corporate representative. The chief credit officer was not the loan officer. He knows that, and he misrepresented that, but the fact of the matter is where he gets that is is that in Mr. White's testimony, they talk about how the committee, the loan committee, reviews loans. This bank's policy is loans over a million dollars would come under strict review of the loan committee. This is a $700,000 loan. There's over 10,000 loans at the bank, so believing that the chief credit officer would have intimate knowledge of 10,000 loans is probably an unfair standard to approach. Also, the loan officers, again, don't have any grounds to be involved in an arbitration. Just like the chief credit officer doesn't have any reason and is not involved in each individual loan of the bank, so I think those are important to point out. The loan committee usually has direct involvement with the loan. The larger credits, not the smaller credits, Your Honor, and this bank has an arbitrary standard of a million dollars when it gets to loan committee. Loans under that don't necessarily fall under loan committee purview, and that's in the record, too. That's what Mr. White testified. They look at loans at a 30,000-foot level. They look at them macroscopically, not microscopically. They tell the loan officer what they have to do. If they think the loan needs to be paid down, that's what they tell the loan officer to do. In an instance, this is exactly what happened here. They had communicated about the McKinnison Broad Street loan, and in fact, they thought the loan would be paid down. This was on a 60-year amortization, so that's what they were trying to do. That's all that email was about. It didn't have anything to do with the guarantors. It didn't have anything to do with the terms. It had to do with getting a loan repaid in just a normal sequence under an objective standard, not necessarily a subjective standard based on that credit, and that's what the testimony shows. I do want to go back and address constructive knowledge because I know I've got to get the manifest in this regard, and I've only got two minutes or less than two minutes, but constructive knowledge will not act as a waiver if there's been a misrepresentation, and that's what we're trying to convince this court, that constructive knowledge shouldn't be involved if there's been a misrepresentation like there was in this instance. There's no reason to even reverse any finding on constructive knowledge because it's really just a clarification of what you're going to do in that instance. You're not violating the rule of orderliness, and you're certainly because you haven't ever addressed to our knowledge where an arbitrator misrepresented in a sworn disclosure statement that no relationship existed and the parties relied on. That's the huge difference in this case. Ms. Schaffer doesn't recognize that. She wants to really get more depth and down in the weeds, but quite frankly, that's the whole thing. Why would you shift the burden back to the parties when there's been a material misdisclosure, misrepresentation by the arbitrator? And so that's where we're really saying that. We don't think you're changing the law. We think you're just moving in that direction. As to manifest disregard, I do believe that the Supreme Court has said that they have not ruled on and have not found that manifest disregard of the law is not incorporated into Section 10A4. You're saying a judicial gloss. Yes. Judicial gloss remains under the Supreme Court, but does it remain under the Fifth Circuit? Well, I don't believe that the Fifth Circuit, and I could be wrong. Y'all would know better than me, but we haven't been able to find a case where y'all said that it doesn't exist except that it doesn't exist under common law, and we agree with that. We think that's right. We disagree with opposing counsel split on the circuits because we think seven of the circuits have found that manifest disregard does still exist, either in a common law form or in a statutory form under Section 4. How is 10A4 violated here? Ma'am? How is 10A4 violated here? I understand your time is up, but you can answer my question. Oh, I'm sorry. I apologize. How is 10A4 violated here? 10A4 is violated here because the arbitrator clearly knew what the law was. He cited it in his case, in his award. The law is abundantly clear. Judge Jordan's opinion in Wachovia makes it clear as is everything. There is no dispute there, and you can look at the opinion or his award and see that he completely disregarded what existing law is, and that's why we think he manifestly disregarded it. Completely disregarding existing law sounds like a freestanding manifest disregard claim, not a statutory disregard claim. Your Honor, if I may answer that question. Please do. When you get to a foreclosure issue in Mississippi law, the three issues that they want to claim are facts are fair market value, debt, and bid price. Fair market value. There were only appraisals in this case that the bank presented. There's no dispute as to that, so there's no factual issue there. There's an application of law issue. There is no dispute as to the debt, so there is no fact issue there. Again, application of law. On the third one, they stipulated that the first six sales were commercially reasonable, so there is no fact issue there that the arbitrator could have found. There's only a legal issue there, and then the law is clear. This is how foreclosure works in Mississippi, and I apologize because I know you all probably know this, but this is how this works. The lender is required, in order to receive a deficiency, to show that they have established fair market value. Okay. Thank you, counsel. We have your argument. Thank you.